**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                            CASE NO. 3:06-cv-222-J-TEM

DIETER H. KLOHN,

       Defendant.

_____

**O R D E R**

    This matter is before the Court on Plaintiff United States of America's (United States) Motion for Partial Summary Judgment (Doc. #23), Defendant Dieter Klohn's (Klohn) response in opposition thereto and counter-motion for partial summary judgment on his counterclaim (Doc. #27), the United States' reply brief (Doc. #31), and Klohn's sur-reply brief (Doc. #36).

    A hearing on this matter was held before the undersigned on February 15, 2008 (Doc. #47).[1]  After hearing argument from the parties, and for the reasons stated herein, the United States' Motion for Partial Summary Judgment (Doc. #23) is **GRANTED in part and DENIED in part** and Klohn's counter-motion for partial summary judgment (Doc. #31) is **GRANTED in part and DENIED in part**.

_____

[1]  At the hearing, the parties stipulated to continuing the trial to the July 17, 2008 trial term. Additionally, the parties further stipulated that the Court shall have jurisdiction over Klohn's counterclaim; however, Klohn is required to file an amended answer to include his proposed counterclaim.

**I. Background**

This is a tax recovery action wherein the United States seeks to reduce to judgment four separate tax assessments levied against Klohn by the Internal Revenue Service (IRS). Two of the four IRS tax assessments at issue are responsible person penalties related to employee income tax withholdings–one for the tax period ending September 30, 1991, and the other for the tax period ending March 31, 1992.  (Doc. #23 at 1).  The remaining two IRS assessments concern income tax liabilities for tax years 1987 and 1988 respectively. (Doc. #23 at 1).

Klohn is a entrepreneur who owned two steel companies in Boston, Massachusetts before going bankrupt in 1992 and moving to Jacksonville, Florida.  Before Klohn was fired by a bankruptcy trustee in 1992, he was the president and one hundred percent owner of KSK Engineering Corporation (KSKEC) and the president and seventy percent owner of KSK Steel Erector Company (KSKSEC).  (Klohn Dep. [Doc. #23-2] at 89-97).  Although Klohn was the president of both KSKEC and KSKSEC, an individual named Kenneth Hurst (Hurst)–Klohn's vice president and chief financial officer– was responsible for handling both companies' financial matters since Klohn had no formal financial training.[2]  (Doc. #27 at 9).

During the late 1980's, Klohn's aforementioned businesses declined to such an extent that he initiated bankruptcy proceedings on February 21, 1992.  Approximately three years later, on April 7, 1995, Klohn received his Discharge of Debtor by the United States Bankruptcy Court of Massachusetts.  (Doc. #27 at 8; Doc. #26-15 at 58).

_____

[2] Klohn maintains that, although he has no formal financial training, he grew his companies to a ten million dollar per year gross receipt enterprise by relying on his engineering skills and aptitude at estimating sales and production. (Doc. #27 at 9).

While Klohn's bankruptcy proceedings were ongoing, the IRS assessed two Trust Fund Recovery Penalties (TFRPs) against Klohn for failure to remit payroll taxes collected by Klohn for the tax period ending September 30, 1991.  One penalty, which was related to KSKEC, was assessed against Klohn on October 5, 1992 and the other penalty, related to KSKSEC, was assessed against Klohn on October 12, 1992.  (Doc. #31-7 at 1).

 On March 26, 1996, approximately eleven months after Klohn was discharged from bankruptcy, the IRS assessed another TFRP against Klohn for failure to remit payroll taxes for the tax period ending March 31, 1992.  On November 15, 1996, approximately eight months after assessing the March 26, 1996 TFRP, *supra,* the IRS made income tax assessments against Klohn based on alleged deficiencies related to his 1987 and 1988 income tax returns.

The United States maintains written notices and demands for payment concerning all of the aforementioned assessments were sent to Klohn by a delegate of the Secretary of Treasury, and that, despite notices and demands for payment, Klohn either refused or neglected to pay the aforementioned assessments.  (Doc. #1 at 2-3).  Additionally, the United States maintains that Klohn currently owes the United States $4,262,969.82.  (Doc. #1 at 2-3).

The United States seeks summary judgment as to all of the assessments mentioned above, except the two TFRP assessments for the tax period ending on September 30, 1991.  (Doc. #23 at 1).  Klohn, in his response to the United States' motion for partial summary judgment, disputes the United States' contention that it is entitled to summary judgment and counters by seeking partial summary judgment as to the two TFRP assessments for the tax period ending on September 30, 1991 and on his proposed

3

counterclaim.  (Doc. #27 at 15; Doc. #18).  In his proposed counterclaim, Klohn request the Court refund to him money he claims was illegally applied to the improperly assessed and invalid TFRP assessments for the tax period ending on September 30, 1991 and that the Court reapply the money to his March 30, 1992 TFRP assessment, which he maintains was validly assessed.  (Doc. #27 at 15; Doc. #18).

## II. Standard of Review

Summary judgment is appropriate only when a court is satisfied "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2007).  The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The burden of establishing the absence of a genuine issue is on the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Federal Rule of Civil Procedure 56(e) provides in relevant part:

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on  allegations or denials in its own pleading; rather its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2) (2007).

The party moving for summary judgment bears the initial burden of demonstrating to the court "by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  A court "must draw all reasonable inferences in favor of the non-moving party,

and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000) (discussing standard for granting judgment as a matter of law under Fed. R. Civ. P. 50, which mirrors the standard for granting summary judgment under Rule 56); *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000). The Court considers the entire record, but must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151; *Hinson*, 231 F.3d at 827.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there is a material issue of fact that precludes summary judgment. *Clark*, 929 F.2d at 608. The non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts, through affidavits or other forms of evidence provided for by the rules. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he inquiry is. . .whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 266 (Brennan, J., dissenting).

A genuine issue of material fact exists where there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor. *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995); *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*). As the Supreme Court has stated, "where the record taken as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Ration Corp.*, 475 U.S. 574, 587 (1986) (*internal citations and quotations omitted*).

Furthermore, in deciding a motion for summary judgment, all the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

### III. Discussion

**A. Trust Fund Recovery Penalty (TFRP) Assessments**

Title 26, United States Code, Sections 3102(a) and 3402(a) require an employer to deduct and withhold income and social security taxes from the wages paid to its employees.  Title 26 further provides that withheld taxes shall be held by the employer as a special trust fund for the benefit of the United States.  26 U.S.C. § 7501.  These monies are commonly referred to as "trust funds" because the withheld taxes are for the exclusive use of the United States and are not to be used to pay the employer's business expenses, including salaries, or for any other purpose.  26 U.S.C. §§ 3102(b), 3403, and 7501(a).

Once the federal income and social security taxes are withheld from employees' wages, the United States is required to credit the amount withheld against the employees' individual income tax liabilities, regardless of whether such taxes are actually paid to the United States and even though the credits may result in refunds to the employees.  26 U.S.C. § 31(a); Treas. Reg. § 1.31-1(a); see *Slodov v. United States*, 436 U.S 238, 243 (1978).

Under 26 U.S.C. § 6672 a one hundred percent penalty shall be assessed against any individual deemed to be a person responsible for collecting, truthfully accounting for, and remitting the unpaid employment taxes.  Although it is characterized as a one hundred percent penalty, the actual amount assessed is merely equal to the amount owed under the trust.  Therefore, in essence, the penalty is simply a collection method.  By shifting

6

liability from the employer as a whole to the individual who was responsible for remitting the withheld taxes, the government attempts to ensure payment by attaching personal liability to the debt.  *See Lynn v. Scanlon*, 234 F. Supp. 140, 144 (E.D.N.Y. 1964).

In its motion for partial summary judgment (Doc. #23), the United States argues summary judgment should be granted in its favor as to the March 31, 1992 TFRP assessment because Klohn admitted in his deposition facts sufficient to establish the elements necessary to sustain the assessments: (1) responsibility for remitting the withheld taxes; and (2) willfulness in failing to pay over the withheld taxes.  (Doc. #23 at 1).

### 1. TFRP for the Tax Period Ending on March 31, 1992

In his counter-motion for partial summary judgment, Klohn acknowledges the March 31, 1992 TFRP was "validly assessed" by the IRS (Doc. # 27 at 2); therefore, the only issue concerning whether summary judgment should be granted in favor of the United States as to the March 31, 1992 TFRP assessment is whether a genuine issue of material fact exists concerning whether Klohn was a responsible person and whether he willfully failed to remit the withheld employee taxes pursuant to 26 U.S.C. § 6672.

Responsibility is a matter of status, duty, and authority, not knowledge.  Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees.  *Thibodeau v. United States*, 828 F. 2d 1499, 1503 (11th Cir. 1987).  Courts have generally taken a broad view of responsibility.  *Smith v. United States*, 894 F.2d 1549, 1553 (11th Cir. 1990).  As long as the right and significant authority to control corporate financial decisions are retained, the requirement of responsibility is met even if such rights are not exercised and there is a lack of involvement in the day-to-day affairs of the

7

corporation. *White v. United States*, 372 F.2d 513, 516-17 (Ct. Cl. 1967); *United States v. Sweetser*, No. 75-29, 1977 WL 1182, at *2 (M.D. Pa. June 1, 1977).[3]

In his deposition testimony, Klohn acknowledged that he was the president, treasurer, and sole shareholder of KSKEC, and that he had the ultimate authority to hire and fire individuals, including Hurst.[4] (Klohn Dep. at 56-65). Moreover, Klohn admits that he directed payment of bills, dealt with major suppliers and customers, negotiated large purchases, contracts, and loans, guaranteed/co-signed corporate bank loans, authorized payroll checks, authorized payment of federal tax deposits, and determined corporate financial policy. (Klohn Dep. at 56-65 and Exhibit 1).

Based upon the prevailing cases law and Klohn's own testimony, *supra*, the Court finds as a matter of law that Klohn was responsible for collecting, truthfully accounting for, and paying over payroll taxes pursuant to 26 U.S.C. § 6672.

The next question concerns whether Klohn willfully failed to remit withheld employee taxes owed to the IRS. The wilfulness requirement under 26 U.S.C. § 6672 is "satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the Government, such as by failing to investigate or to *correct mismanagement after being notified that withholding taxes have not been duly remitted.*" *Mazo v. U.S.*, 591 F.2d 1151, 1155 (5th Cir. 1979) (*internal citations omitted*) (*emphasis*

---

[3] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

[4] The Court notes that, although Klohn was only a seventy percent shareholder of KSKSEC, Klohn had essentially the same authority at KSKEC as he had at KSKSEC, including the authority to fire Hurst. (Klhon Dep. at 91-96). Additionally, Klohn maintains his defenses are the same for KSKEC and KSKSEC, respectively. (klohn Dep. at 96-97, 117).

*added).*[5]  Moreover, although reasonable cause may excuse the failure to pay over withheld employee taxes, "the mere delegation of responsibility to another does not constitute reasonable cause." *Id.*

Here, Klohn admits he received notice that the IRS was owed unpaid payroll taxes in August 1991 when he was contacted by an IRS agent named Tom Jakes (Jakes). (Klohn Dep. at 66-67).   In Klohn's response to the United States' motion for partial summary judgment (Doc. #27), Klohn maintains that one month after he was informed that his companies' payroll taxes were unpaid, he was hospitalized with spinal meningitis and nearly died, thus, he was unable to attend to business.  (Doc. #27 at 10).

In support of his contention that he did not willfully fail to remit past due payroll taxes because he was hospitalized, Klohn cites paragraph 22 of his first affidavit.  (Doc. #27 at 10).  Paragraph 22 of Klohn's first affidavit, however, does not support Klohn's contention that he was hospitalized.  (Klohn Aff. First [Doc. #26-6] ¶ 22).  In fact, Klohn makes no mention of being hospitalized anywhere in his first affidavit, or in his second affidavit.  (*See* Klohn Aff. First; Klohn Aff. Second [Doc. #39]).

When asked by the undersigned at the February 15, 2008 hearing if Klohn had any hospital records to support his contention that he was hospitalized during the time period in question, counsel for Klohn responded that he did not.  (Doc. #47).

The non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts, through affidavits or other forms of evidence provided for by the rules.  *Adickes*, 398 U.S. at 157.  A genuine issue of material fact exists

---

[5] Decisions of the Fifth Circuit rendered on or before September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

where there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor.  *Haves*, 52 F.3d at 921.  As the Supreme Court has stated, "where the record taken as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (*internal citations and quotations omitted*).

Here, the record is devoid of any evidence that Klohn was unable to attend to business matters because he was hospitalized.  In fact, the evidence of record is to the contrary.  For instance, Klohn's deposition testimony indicates that he did, in fact, attend to business matters during the time period in question and that he merely re-delegated his duty to remit payroll taxes to the same individual he knew was responsible for not paying the taxes in the first place.

Specifically, Klohn states that once he found out the payroll taxes had not been paid by Hurst, he confronted Hurst and found out that Hurst had paid suppliers (*i.e.* other creditors) instead of remitting the payroll taxes to the government.  (Klohn Dep. at 66-68).  Klohn next states that he "had some choice words" for Hurst, and that he then went and personally borrowed $400,000 in order to pay down the delinquent payroll taxes.  (Klohn Dep. at 68).  Klohn states that he deposited the borrowed funds into KSKEC's corporate bank account and instructed Hurst to pay the IRS before paying any other suppliers.  (Klohn Dep. at 70-71).

Klohn further states that "a month or two" after he was made aware of the delinquent taxes, he hired an individual named Steven Von Lichtenberg (Lichtenberg) to perform an

internal audit of his companies and make sure payroll taxes were paid.[6] (Klohn Dep. at 71-76). Klohn states that Lichtenberg set up procedures to make sure all of the payroll liabilities were being paid, but that he did not know what those were. (Klohn Dep. at 74-75). Klohn then states that Lichtenberg resigned shortly after he was hired because Lichtenberg discovered his companies had no more financial viability and were essentially bankrupt. (Klohn Dep. at 75).

In his aforementioned deposition testimony, Klohn admits that he was contacted by an IRS agent and made aware that payroll taxes were not being paid to the government. (Klohn Dep. at 66-67). Klohn's testimony shows that after he received notice that the payroll taxes were not being paid by the individual he delegated the responsibility to pay those taxes to (*i.e.* Hurst) he once again delegated the responsibility to remit the unpaid taxes to Hurst and then, subsequently, to Lichtenberg–who quit shortly thereafter. (Klohn Dep. at 66-68).

"The willfulness requirement is satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the Government. . . such as by failing to investigate *or to correct mismanagement after being notified* that withholding taxes have not been duly remitted." *Mazo*, 591 F.2d at 1155 (*emphasis added*). Moreover, "[i]f, after receiving actual notice, corporate officials could once again delegate their responsibility to subordinates, then repeated escape from liability would be possible and the government would be required to monitor corporate affairs daily. The statutory concept of willfulness conveys no such meaning." *Id.* at 1157.

---

[6] Klohn states that he felt he could not fire Hurst because his creditors told him he would lose his line of credit if he fired Hurst and that he would be foreclosed on. (Klohn Dep. at 73-77).

Concerning the March 31, 1992 TFRP assessment, Klohn has neither presented evidence creating a genuine issue of material fact to support his contention that he was not a responsible person under 26 U.S.C. § 6672, nor has he created a genuine issue of material fact that he did not willfully fail to remit the payroll taxes by recklessly disregarding a known or obvious risk that the payroll taxes at issue might not be remitted to the Government.

Additionally, although the United States has apparently lost Defendant's administrative file and cannot produce the documents underlying the TFRP assessments, the United States is entitled to rely on a presumption of correctness of its internal records. *See United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir. 1989).  Specifically, the United States is entitled to rely on its Certificate of Assessments and Payments as presumptive proof that the assessments were valid when made with the burden on the taxpayer to overcome this presumption by countervailing proof.  *Id.; see also United States v. White*, 466 F.3d 1241, 1248-49 (11th Cir. 2006).

Here, Klohn has produced no evidence of record to refute the dollar amount the United States claims is owed under the presumptively valid TFRP assessment.  Since Klohn's proposition that the United States' Certificate of Assessments and Payments should not be given presumptive effect (Doc. #23-11 at 22-29) is not supported by his books, receipts or other records, the Court finds the Certificate of Assessments and Payments is presumptively correct as it relates to the amount owed the United States under the TFRP assessment for the tax period ending on March 31, 1992.

Accordingly, the Court finds that summary judgment should be granted in favor of the United States as it relates to the TFRP assessment for the tax period ending on March

12

31, 1992.

### 2. TFRP Assessments for the Tax Period Ending on September 30, 1991

In his counter-motion for summary judgment, Klohn refutes the legal validity of the two September 30, 1991 TFRP assessments by arguing they were improperly and illegally assessed against him and are, therefore, void *ab initio*.  (Doc. #27 at 2, 8-9).  Klohn argues the aforementioned TFRP assessments are void since they were assessed in violation of the automatic stay that was in place at the time the assessments were made.  (Doc. #27 at 8-9).  For the reasons stated below, the Court finds Klohn's argument persuasive; therefore, summary judgment shall be granted in favor of Klohn as to the two TFRP assessments for the tax period ending on September 30, 1991.

Under 11 U.S.C. § 362(a), a debtor who has filed for Chapter 11 bankruptcy enjoys an automatic stay against actions to enforce, collect, assess or recover claims against the debtor.[7]  "It is the law of this Circuit [the Eleventh Circuit] that 'actions taken in violation of the automatic stay are void and without effect.'"  *White*, 466 F.3d at 1244 (*quoting Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982).

Even though it is well established that tax assessments made in violation of the automatic stay provision of 11 U.S.C. § 362(a) are void *ab initio*, the United States argues that the two September 30, 1991 TFRP assessments are merely voidable because Klohn remained "stealthily silent" by not notifying the IRS that it had made the aforementioned assessments in violation of the automatic stay provision.  (Doc. #31 at 4-6).  The United

---

[7] In 1994, Congress amended 11 U.S.C. § 362(a) so that debtors could no longer enjoy an automatic stay against tax assessments.  Because the amendment to 11 U.S.C. § 362(a) was not in effect when Klohn filed for bankruptcy and because the amendment does not have retroactive effect, the Court confines its analysis to the pre-amendment version of the aforementioned statute.

States maintains that, if Klohn had notified the IRS that the assessments were invalid, the IRS could have cured its mistake by reassessing the two TFRP penalties against Klohn once he was discharged from bankruptcy.  (*See* Doc. #31 at 4-6).

To support its contention that the two TFRP assessments for the tax period ending on September 30, 1991 are not void but are merely voidable because Klohn remained "stealthily silent," the United States relies on a single Court of Federal Claims case, *Bronson v. United States*, 28 Fed. Cl. 756 (Fed. Cl. 1993).  (Doc. #31 at 5).  The Court notes that, although the lower court, in *Bronson*, held the TFRP assessment in that case was not void *ab initio* because the taxpayer remained "stealthily silent," the appellate court (although it sustained the lower court's judgment) disagreed with the lower court's reasoning.  *Bronson v. U.S.*, 46 F.3d 1573 (Fed. Cir. 1995).

Specifically, the appellate court held that the TFRP assessment at issue in *Bronson* was not void because the actions of the taxpayer (*i.e.* being stealthily silent) were sufficient to negate the policies of the automatic stay, but because it believed the assessment itself did not violate the policies of the automatic stay since it was a tax assessment, as opposed to an ordinary debt.  *Bronson*, 46 F.3d at 1581.  The Court notes that the holding in the *Bronson* case is contrary to the weight of authority and Eleventh Circuit precedent; therefore, the Court declines to apply *Bronson* to the facts of this case.

Accordingly, the Court finds that the undisputed evidence of record shows the two TFRP penalties for the tax period ending on September 30, 1991 were assessed against Klohn while the automatic stay provision of 11 U.S.C. § 362(a) was in place, thus, the assessments were void *ab initio* and have no effect.  Summary judgment shall be granted in Klohn's favor with respect to the two TFRP penalties for the tax period ending on

14

September 30, 1991.

**B. Income Tax Liabilities for Tax Years 1987 & 1988**

The United States moves for summary judgment as to Klohn's income tax liabilities for the tax years 1987 and 1988, respectively.  (Doc. #23 at 11-12).  The United States argues Klohn's aforementioned income tax liabilities should be reduced to judgment because the Certificates of Assessments and Payments are presumptively correct and that it is Klohn's burden to come forward with countervailing proof to refute the presumption of correctness.[8]  (Doc. #23 at 12).

Klohn counters by arguing that the income tax assessments related to his 1987 and 1988 tax returns were either discharged in bankruptcy or are time-barred based on the assessment statute of limitations period of three years since the assessments were made well after three years from the date he filed his returns.[9]  (*See* Doc. #27 at 7-8; 26 U.S.C. § 6501(a) and 26 U.S.C. § 6503(h)(1)).

The Court finds that, while it is Klohn's burden to overcome the presumption of correctness of the IRS Certificates of Assessments and Payments (with the exception of the fraud penalty assessed in 1987), Klohn's argument that the 1987 and 1988 tax returns were either discharged in bankruptcy or time-barred based on the assessment statute of limitations period of three years is persuasive to the extent that he has raised a genuine

---

[8] The Court notes this is true, with the exception that the burden of proof is on the United States to show the basis for the $19,415.23 fraud penalty for the 1987 tax year.  *Korecky v. C.I.R.*, 781 F.2d 1566,1568 (11th Cir. 1886) ("The IRS bears the burden of proving fraud, which must be established by clear and convincing evidence.") (*internal citations omitted*).

[9] Klohn filed his 1987 tax return on November 21, 1988 (Doc. #31-3 at 1) and his 1988 tax return on November 20, 1989.  (Doc. #31-4 at 1).  The IRS assessed the income tax liabilities for both 1987 and 1988 on November 15, 1996–well beyond the assessment statute of limitations period of three years. (*See* Docs. #23-11 at 1 and #23-12 at 1).

issue of material fact concerning whether he consented to an extension of the assessment statute of limitations.

Specifically, it is the United States' burden to show that a proper waiver of the assessment statute of limitations period was executed.  "Once the taxpayer shows that the assessment occurred outside of the statutory period, the burden shifts to the Commissioner to show the existence of consent to extend the statute."  *Feldman v. Comm'r of Internal Revenue*, 20 F.3d 1128, 1132 (11th Cir 1994).  Since the United States has lost Klohn's administrative file, it has been unable to produce any evidence, other than several data entries on the Certificates of Assessments and Payments that state a waiver was obtained, to show it obtained a properly executed waiver from Klohn.

Additionally, the Court notes the data entries on the Certificates of Assessments and Payments concerning Klohn's alleged waiver for the tax years 1987 and 1988 are inconsistent with similar waiver entries on other Certificates of Assessments and Payments produced by the United States.  Specifically, the waiver entries for the tax years 1978 and 1988 were entered on the same date the waiver was due to expire–whereas on the other Certificates of Assessments and Payments produced by the United States, the waiver entry was entered well before the waiver was due to expire.

At the hearing, the United States maintained it would produce at least one witness who will testify as to the policies and procedures of the IRS as they relate to the process for the data entry of waivers, and that it will be able to explain the aforementioned inconsistency in the record.

Accordingly, the Court finds there remains a genuine issue of material fact as to whether Klohn committed fraud and as to whether he executed any waivers of the

assessment statute of limitations period for the tax years 1987 and 1988, respectively; therefore, the Court denies summary judgment as to this issue.

## C. Klohn's Counterclaim

Although the United States has agreed to allow Klohn to file an amended answer to include his proposed counterclaim; to date, Klohn has not done so, therefore, the Court will not address this issue at this time.

### IV. Conclusion

Based on the foregoing, it is hereby **ORDERED**:

1.   The United States' Motion for Partial Summary Judgment (Doc. #23) is **GRANTED to the extent that** the Court grants summary judgment in favor of the United States concerning the TFRP assessment for the tax period ending on March 31, 1992.

2.   The United States' Motion for Partial Summary Judgment (Doc. #23) is **DENIED to the extent that** the Court denies summary judgment concerning Klohn's income tax liabilities for the tax years 1987 and 1988.  The Court finds genuine issues of material fact remain concerning the alleged fraud penalty and whether Klohn executed any waivers of the assessment statute of limitations period.

3.   Klohn's counter-motion for partial summary judgment (Doc. #27) is **GRANTED to the extent that** the Court finds the two TFRP assessments for the tax period ending on September 30, 1991 are void *ab initio* and are without effect.

17

4.   Klohn's counter-motion for partial summary judgment (Doc. #27) is **DENIED to the extent** it relates to Defendant's proposed counterclaim; **however, the Court grants Klohn leave to file an amended answer** to include his proposed counterclaim.

5.   The trial set for the March 11, 2008 trial calender is **hereby continued, by agreement of the parties, to the July 17, 2008 trial term**.

6.   Additionally, Klohn has requested, and shall be allowed, to acquire additional records related to his 1992 bankruptcy so that he may determine the amount of money, if any, he has already paid to the United States through bankruptcy proceedings regarding the tax liabilities at issue.   Accordingly, the Court reserves ruling on any dollar amount Plaintiff owes the United States until after trial.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of March, 2008.

*Thomas E. Morris*
_____
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record
and *pro se* parties

18