**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                           CASE NO. 3:06-cv-222-J-TEM

DIETER H. KLOHN,

    Defendant.

_____

## O R D E R

This matter is before the Court on Defendant's Motion for Reconsideration (Doc. #49, Motion) of the Court's Order (Doc. #48, Order), dated March 11, 2008. In the Order, the Court granted in part and denied in part the United States' motion for partial summary judgment (Doc. #23) and granted in part and denied in part Defendant's counter-motion for summary judgment (Doc. #27).

At present, Defendant seeks reconsideration of the Court's Order to the extent it: (1) denied Defendant's counter-motion for summary judgment (Doc. #27) regarding the 1987 and 1988 federal income tax liabilities; and (2) granted the United States' motion regarding the trust fund recovery penalty for the period ending March 31,1992.

The Court ruled correctly on both of these issues. Accordingly, Defendant's Motion shall be **DENIED** for the following reasons.

**I. Discussion**

**A. Income Tax Liabilities for Tax Years 1987 & 1988**

In its motion for summary judgment (Doc. #23), the United States moved to have Defendant's income tax liabilities for the tax years 1987 and 1988 reduced to judgment (Doc. #23 at 11-12). The United States argued Defendant's aforementioned income tax liabilities should be reduced to judgment because the IRS's Certificates of Assessments and Payments are presumptively correct and Defendant's bears the burden to come forward with countervailing proof to refute this presumption of correctness (Doc. #23 at 12).[1]

In response, Defendant countered by arguing the income tax assessments related to his 1987 and 1988 tax returns were either discharged in bankruptcy or are time-barred based on the assessment statute of limitations period of three years since the assessments were made well after three years from the date he filed his returns (*see* Doc. #27 at 7-8; 26 U.S.C. § 6501(a) and 26 U.S.C. § 6503(h)(1)). Based on the foregoing, Defendant moved for summary judgment in his favor.[2]

In its Order on the parties' respective motions for summary judgment (Doc. #48), the Court found Defendant's argument that the 1987 and 1988 tax liabilities were either discharged in bankruptcy or time-barred based on the assessment statute of limitations

---

[1] The Court notes this is true, with the exception that the burden of proof is on the United States to show the basis for the $19,415.23 fraud penalty for the 1987 tax year. *Korecky v. C.I.R.*, 781 F.2d 1566,1568 (11th Cir. 1886) ("The IRS bears the burden of proving fraud, which must be established by clear and convincing evidence.") (*internal citations omitted*).

[2] Defendant filed his 1987 tax return on November 21, 1988 (Doc. #31-3 at 1) and his 1988 tax return on November 20, 1989 (Doc. #31-4 at 1). The IRS assessed the income tax liabilities for both 1987 and 1988 on November 15, 1996–well beyond the assessment statute of limitations period of three years (*see* Docs. #23-11 at 1 and #23-12 at 1).

period of three years was persuasive to the extent that he has raised a genuine issue of material fact concerning whether he consented to an extension of the assessment statute of limitations period.

Specifically, it is the United States' burden to show that a proper waiver of the assessment statute of limitations period was executed. "Once the taxpayer shows that the assessment occurred outside of the statutory period, the burden shifts to the Commissioner [*i.e.* the United States] to show the existence of consent to extend the statute." *Feldman v. Comm'r of Internal Revenue*, 20 F.3d 1128, 1132 (11th Cir. 1994).

Here, the United States has either lost or destroyed Defendant's administrative file and has only been able to produce data entries on the Certificates of Assessments and Payments to show Defendant executed waivers of the assessment statute of limitations period. At the February 15, 2008 hearing,[3] the United States maintained it would produce at least one witness who will testify as to the policies and procedures of the IRS concerning how those policies relate to data entry of waivers, and that it will be able to show Defendant executed several waivers.

Based on the foregoing, in its Order dated March 11, 2008, the Court found a genuine issue of material fact remained as to whether Defendant executed waivers of the assessment statute of limitations period for the tax years 1987 and 1988 and denied summary judgment in Plaintiff's favor as to this issue (Doc. #48).

---

[3] A hearing on the parties' cross-motions for summary judgment was held on February 15, 2008. The non-transcribed recording of the hearing is hereby incorporated by reference. The parties may contact the Courtroom Deputy of the undersigned if a transcript of the hearing is desired.

Defendant, in his instant motion (Doc. #49), argues the United States never established that he executed a Form 872 extending the assessment statute expiration date for the 1987 and 1988 tax years (Doc. #49 at 3). As mentioned above, the Court has already determined that a genuine question of material fact exists, and has appropriately denied summary judgment as to this issue. The declaration of Revenue Officer Rod Wills ("Wills") states that IRS transcripts show Defendant extended the statute of limitations to April 24, 1995, for both the 1987 and 1988 tax years by executing a Form 872 (Doc. #31-2).

Defendant does not deny executing the extension forms. Rather, he merely testified that he does not recall having do so, even though he maintains he has a "remarkable recall or memory" (Doc. #49 at 3; Doc. #26-6 at ¶ 5). The United States cannot produce the extension forms themselves because the administrative files have been either lost or destroyed. The United States, however, has produced IRS transcripts–which the Court finds constitutes circumstantial evidence that extension forms may have been executed by Defendant. Since there is a factual dispute concerning whether Defendant executed extension forms, entry of summary judgment for Defendant would not be appropriate at this juncture.

**B. Trust Fund Recovery Penalty for the Tax Period Ending on March 31, 1992**

Defendant next argues that a dispute of fact exists as to the willfulness element concerning the trust fund recovery penalty ("TFRP") liability for the period ending March 31, 1992 (Doc. #49 at 5). Defendant believes a jury might find that his failure to pay the payroll taxes was reasonable under the circumstances (Doc. #49 at 5).

The record, however, supports a finding that Defendant was willful as a matter of law because he acted with reckless disregard of the unpaid payroll tax debt.  *See U.S. v. Malloy*, 17 F.3d 329, 331 (11th Cir. 1994).  The wilfulness requirement under 26 U.S.C. § 6672 is "satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that trust funds *may* not be remitted to the government, such as by failing to investigate or to *correct mismanagement after being notified that withholding taxes have not been duly remitted*."  *Mazo v. U.S.*, 591 F.2d 1151, 1155 (5th Cir. 1979) (*internal citations omitted*) (*emphasis added*).[4]  Moreover, although reasonable cause may excuse the failure to pay over withheld employee taxes, "the mere delegation of responsibility to another does not constitute reasonable cause."  *Id*.

Here, Defendant admits he received notice that the IRS was owed unpaid payroll taxes in August 1991 when he was contacted by an IRS agent named Tom Jakes ("Jakes") (Doc. #23-2 at 66-67).  In Defendant's response to the United States' motion for partial summary judgment (Doc. #27), Defendant maintained that one month after he was informed the subject payroll taxes were unpaid, he was hospitalized with spinal meningitis and nearly died; thus, he was unable to attend to business (Doc. #27 at 10).

In support of his contention that he did not willfully fail to remit past due payroll taxes because he was hospitalized, Defendant cited paragraph 22 of his first affidavit (Doc. #27 at 10).  Paragraph 22 of Defendant's first affidavit, however, does not support Defendant's contention that he was hospitalized (Doc. #26-6 at ¶ 22).  In fact, Defendant neither mentions being hospitalized in his first affidavit, nor in his second affidavit (*see* Docs. #26-

---

[4] Decisions of the Fifth Circuit rendered on or before September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

6 and #39).

When asked by the undersigned at the February 15, 2008 hearing if Defendant had any hospital records to support his contention that he was hospitalized during the time period in question, counsel for Defendant responded that he did not (Doc. #47).  In the instant motion, Defendant once again avers that he should not be held accountable for failing to remit payroll taxes because he was hospitalized (Doc. #49 at 5).  Defendant cites pages 66-75 of his deposition testimony to support this contention; however, the Court finds the deposition testimony does not provide evidence to support Defendant's claim that he was hospitalized during the time period in question (*see* Doc. #23-2 at 66-75).

The non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts, through affidavits or other forms of evidence provided for by the rules. *Adickes*, 398 U.S. at 157.  A genuine issue of material fact exists where there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor.  *Haves*, 52 F.3d at 921.  As the Supreme Court has stated, "where the record taken as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (*internal citations and quotations omitted*).

Here, the record is devoid of any evidence that Defendant was unable to attend to business matters because he was hospitalized.  In fact, the evidence of record is to the contrary.  For instance, Defendant's deposition testimony indicates that he did, in fact, attend to business matters during the time period in question and that he merely re-delegated his duty to remit payroll taxes to the same individual he knew was responsible

6

for not paying the taxes in the first place.[5]

Specifically, Defendant stated that, once he found out the payroll taxes had not been paid by Hurst, he confronted Hurst and found out Hurst had paid suppliers (*i.e.* other creditors) instead of remitting the payroll taxes to the United States (Doc. #23-2 at 66-68). Defendant further stated that he "had some choice words" for Hurst, and then went and personally borrowed $400,000 in order to pay down the delinquent payroll taxes (Doc. #23-2 at 68). Defendant stated that he deposited the borrowed funds into a corporate bank account and instructed Hurst to pay the IRS before paying any other suppliers (Doc. #23-2 at 70-71).

Defendant further stated that "a month or two" after he was made aware of the delinquent taxes, he hired an individual named Steven Von Lichtenberg ("Lichtenberg") to perform an internal audit of his companies to make sure payroll taxes were paid (Doc. #23-2 at 71-76).[6] Defendant stated that Lichtenberg set up procedures to make sure all of the payroll liabilities were being paid, but that he did not know what those were (Doc. #23-2 at 74-75). Defendant also stated that Lichtenberg resigned shortly after he was hired because Lichtenberg discovered Defendant's companies had no more financial viability and were essentially bankrupt (Doc. #23-2 at 75).

In his aforementioned deposition testimony, Defendant admitted that he was contacted by an IRS agent (Jakes) and made aware that payroll taxes were not being paid

---

[5] An individual named Kenneth Hurst ("Hurst")–Defendant's vice president and chief financial officer–was responsible for handling Defendant's financial matters, including the payment of payroll taxes (Doc. #27 at 9).

[6] Defendant states that he felt he could not fire Hurst because his creditors told him he would lose his line of credit if he fired Hurst and that he would be foreclosed on (Doc. #23-2 at 73-77).

to the United States (Doc. #23-2 at 66-67). Defendant's testimony shows that after he received notice that the payroll taxes were not being paid by the individual he delegated the responsibility to pay the taxes to (*i.e.* Hurst) he once again delegated the responsibility to remit the unpaid taxes to Hurst and then, subsequently, to Lichtenberg–who quit shortly thereafter (Doc. #23-2 at 66-68).

"The willfulness requirement is satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government. . . such as by failing to investigate *or to correct mismanagement after being notified* that withholding taxes have not been duly remitted." *Mazo*, 591 F.2d at 1155 (*emphasis added*). Moreover, "[i]f, after receiving actual notice, corporate officials could once again delegate their responsibility to subordinates, then repeated escape from liability would be possible and the government would be required to monitor corporate affairs daily. The statutory concept of willfulness conveys no such meaning." *Id.* at 1157.

Concerning the March 31, 1992 TFRP assessment, Defendant has not presented evidence creating a genuine issue of material fact to support his contention that he did not willfully fail to remit the payroll taxes by recklessly disregarding a known or obvious risk that the payroll taxes at issue might not be remitted to the United States.

As a matter of law, a responsible person cannot delegate the responsibility to pay the tax debt to another. *Id.* at 1155. Accordingly, Defendant's actions support a finding of wilfulness as a matter of law.

## II. Conclusion

Based on the foregoing, it is hereby **ORDERED**:

Defendant's Motion for Reconsideration (Doc. #49) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this  25th  day of June, 2008.

Copies to all counsel of record
    and *pro se* parties, if any

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge